THE BEAR RIVER VALLEY ORCHARD COMPANY,
RESPONDENT, *v.* P. M. HANLEY ET AL., APPELLANTS.

1. *Final Judgment.*

Orders granting or denying new trials are not final judgments, within section 9 of article 8 of the constitution.

2. *Appeal—When Taken.*

An appeal may be taken from a final judgment within one year after an order denying a motion for a new trial; and an exception to the verdict or decision on the ground that the same is not supported by the evidence may be reviewed when the appeal is taken within sixty days after such order.

3. *Stock of Corporation—When Held in Trust.*

When the officers of a corporation wrongfully convey its real estate to a second corporation in payment for stock, and the secretary of the latter issues such stock to himself, he will hold it in trust for the corporation who paid for it.

4. *Doctrine of Ultra Vires—When Allowed.*

The doctrine of *ultra vires*, when invoked for or against a corporation, should not be allowed when it would defeat the ends of justice or work a legal wrong.

5. *Corporation—When Bound.*

An officer of a corporation cannot bind it when acting for both at the same time.

(No. 826.    Decided Oct. 15, 1897.)

Appeal from the Second district court, Weber county. John A. Street, *Judge.*

Action by the Bear River Valley Orchard Company against Peter M. Hanley and others. From a judgment for plaintiff defendants appeal. *Affirmed.*

*Maloney & Perkins*, for appellants.

*Evans & Rogers*, for respondent.

While we recognize the fact that in the case of *Watson* v. *Maybery*, 15 Utah 265, this court, by a divided court, and in the absence of one of the justices, held that the sixty day period began to run after the ruling on the motion for a new trial, yet we are not content to accept the majority opinion as the law, in view of the uniform line of decisions to the contrary. Indeed, our own court, in the case of *Jones* v. *Insurance Co.*, 14 Utah 215, held that no appeal would lie sixty days after the rendition of the judgment. *Hanks* v. *Matthews*, 8 Utah 181; *Reever* v. *White*, 8 Utah 189; *Voorhees* v. *Manti*, 13 Utah 435; *Brough* v. *Mighell*, 6 Utah 317; see Code Civil Proc. Cal. sec. 939 and notes.

We respectfully contend that under the California statute, which was borrowed by us, that we are bound by the construction placed thereon by them at the time we adopted this provision. Their construction is that the time begins to run from the rendition of the judgment and not from the time the motion for a new trial was denied. See 28 Cal. 417; 31 Cal. 208; 32 Cal. 159; 35 Cal. 216; 36 Cal. 252; 38 Cal. 424; 42 Cal. 387; 58 Cal. 578; 60 Cal. 414; 49 Cal. 105.

See also: *Machine Co.* v. *Mining Co.*, 6 Utah 351; S. C. affirmed in 151 U. S. 447; *Mining Co.* v. *Haws*, 7 Utah 515.

ZANE, C. J.:

On the 21st day of November, 1896, a decree was rendered against the defendants, and a motion for a new trial, duly served and entered, was overruled by the court on the 29th day of the following March. From the judgment and order overruling the motion, the defendants appealed, on the 19th day of the following April. The

plaintiff moves the court to dismiss the appeal from the order. This court has repeatedly held that orders granting or denying motions for new trials are not final judgments, within section 9 of article 8 of our constitution. The motion to dismiss the appeal from that order is granted.

The plaintiff also contends that exceptions to the decision of the court below on the ground that it was not supported by the evidence cannot be considered by us in deciding the appeal from the judgment because it was not taken within 60 days after its rendition. In the case of *Watson* v. *Mayberry*, 15 Utah 265, this court held that the phrase "final judgment," as used in the same section of the constitution, means judgments terminating the litigation between the parties in the court rendering it, and, when a motion for a new trial is duly made within the time prescribed by law, the judgment becomes final for the purposes of an appeal, when it is overruled; and that an appeal may be taken from a judgment within one year after the date of the order overruling the motion; but that an exception to the decision or verdict on the ground that it is not supported by the evidence cannot be reviewed on the appeal from such judgment, unless taken within 60 days after it becomes final. The notice of the motion for a new trial having been duly served and entered within the 10 days allowed by the statute, and the order overruling it having been made within 60 days before the appeal, it is our duty to consider such exceptions. The cases cited by plaintiff's counsel were considered upon the hearing of the case of *Watson* v. *Mayberry, supra,* and found to be upon statutes under constitutional provisions differing from our own, or in cases not analogous to that case, which, upon the point under consideration, is entirely analogous to this.

The case of *Blyth & Fargo Co.* v. *Swenson*, 15 Utah 345, also decided by this court, in effect approved of *Watson* v. *Mayberry*.

The conflicting claims of the parties to the original complaint, and the cross complaint of the defendants against the Bear River Irrigation & Ogden Waterworks Company and others, and the cross complaint of the latter company against Peter M. Hanley and others, and the respective answers to those complaints, raise a question as to the respective rights of Hanley and the irrigation and waterworks company to 930 shares of the capital stock of the plaintiff, the orchard company. The former claims both the equitable and legal title to the stock, while the irrigation and waterworks company claims the equitable title, and insists that Hanley holds the legal title in trust simply. In order to determine the question, it is necessary to examine the evidence in the record.

It appears that the Bear River Irrigation & Ogden Waterworks Company was organized under chapter 1, pt. 4, 2 Comp. Laws Utah 1888, on September 1, 1894, with its capital stock divided into 24,000 shares, of the par value of $100 each; that among its corporators and directors were William H. Rowe and Peter M. Hanley; that it was authorized to appropriate and acquire the waters of Bear River for irrigation and other purposes, to construct a canal and waterworks, to purchase, acquire, hold, cultivate, and convey lands, and to conduct other business. It further appears that the Bear River Valley Orchard Company was organized under the same law on the 25th day of January, 1895; that Rowe and Hanley were also among its corporators and directors; that the former was selected president, and the latter secretary and treasurer; that its capital stock was divided into 1,000 shares, of the par value of $100 each; that Rowe

and Hanley subscribed for 10 shares each, and the latter subscribed also for 930 shares as trustee. The business of the company, as set forth in its articles, was to acquire real estate and water rights, and to own, cultivate, irrigate, sell, and otherwise dispose of lands with water rights, to set out and cultivate fruit trees, and to sell and otherwise dispose of orchards. It further appears that on and prior to March 5, 1895, William H. Rowe held in trust for the irrigation and waterworks company the legal title to section 3, described in the pleadings, consisting of 640 acres of land; that, as such trustee, with the knowledge of Hanley, he executed a warranty deed purporting to convey the same to the orchard company, and on the same day also conveyed by deed, in the name of the irrigation waterworks company, to the same grantee, a perpetual right to water to be taken from the canal of the grantor, to irrigate the land; and that the entire capital stock of the orchard company was paid in by those conveyances, and no other payment to the capital stock of the company was made, and all funds appropriated to the furtherance of the business of the orchard company, except funds derived from the sale of portions of section 3, were furnished by the irrigation and waterworks company. It further appears that Hanley, as secretary of the orchard company, surrendered the 930 shares of stock in the company that had been issued to him as trustee of the irrigation and waterworks company, and, in lieu thereof, reissued the same in his individual name, without 'the consent or knowledge of the directors or other officers of the last-named company, except Rowe. It further appears that while Rowe and Hanley were directors of the irrigation and waterworks company, and the former was its president, and the latter its assistant secretary and auditor, and while both were its acting managers, and

receiving salaries therefrom, Rowe, in pursuance of an understanding with Hanley, made 10 promissory notes, bearing date December 13, 1895, for the payment of $2,460 each, the first to become due April 1, 1897, and one on the same day and month of each year thereafter until all should become due, all bearing interest at seven per cent per annum, except the first, which drew no interest, and all payable to the Bear River Irrigation & Ogden Waterworks Company, and signed, "Bear River Valley Orchard Co., by W. H. Rowe, President." It also appears that a written contract purporting to be between the irrigation and waterworks company, by W. H. Rowe, its president, and P. M. Hanley, was made on December 13, 1895, in which the latter acknowledged himself indebted to the former in the sum of $24,600, the aggregate of the above notes of the orchard company, to be paid according to the terms of the notes; and, to secure their payment, Hanley agreed to pledge 300 shares of the orchard company stock reissued by him, upon the express condition that said shares, though in the possession of the irrigation and waterworks company, should remain the property of Hanley as if they were in his possession, except, upon his failure to pay any note within six months after it became due, the irrigation and waterworks company might sell the stock certificate securing it, or upon demand the same should be transferred upon the books of the orchard company. In the agreement the number of the certificate of stock to secure the respective note was given, and it was provided that the sale and transfer of the stock embraced in such certificate should be a full satisfaction of the note secured by it, and that no other claim therefor should exist against the pledgor, and that the payment of any note should release the stock pledged to secure it. It was also stipulated on March 18, 1896, that 300 more

shares of stock should be delivered by Hanley as addition-
al security for the 10 notes, to be held upon the same condi-
tions as the first 300. At the same time, it was agreed by
Rowe and Hanley, personally, that as the capital stock
should be released from the pledge, and returned to Han-
ley, it should be reissued, and divided equally between
them.

The foregoing facts suggest the question, how were the
rights of the parties to the transactions which they dis-
close affected by them? The entire capital stock of the
Bear River Valley Orchard Company consisted of the 640
acres of land and the water right transferred with it; and
it was owned by the Bear River Irrigation & Ogden
Waterworks Company, and was conveyed by it to the
first-named company. No other payment was made to its
capital stock. The conveyance of the land with the water
right was made in pursuance of the proviso to section
2268, Comp. Laws Utah 1888, as follows: "Provided, that
where the amount of the capital stock of any corporation
which may be formed under the provisions of this act,
consists of the aggregate valuation of property, for the
working, development, management, use, sale or ex-
change, of which such corporation shall be formed, no
actual subscription in money to the capital stock of such
corporation shall be necessary; but each owner of such
property shall be deemed to have subscribed such an
amount to the capital stock of such corporation as under
the by-laws will represent the fair estimated cash value
of so much of said property, the title to which he may,
by deed of trust, convey, or may have conveyed, or vested
in such corporation; such subscription to be deemed to
have been paid in upon the execution and delivery to such
corporation of such conveyance or deed of trust." This
proviso declares that each owner of such property shall

be deemed to have subscribed such an amount to the capital stock of the corporation. formed as, under the by-laws, will represent the fair estimated cash value of so much of the property the title to which he may have vested in it, and that such subscription will be deemed to have been paid upon the execution and delivery to such corporation of such conveyance. By the conveyance of the land with the water right, the irrigation and water-works company paid in the entire capital stock of the orchard company, and was entitled to all the stock issued upon it. In the absence of a valid assignment of such stock to Hanley, the orchard company had no right to issue it to him; and, if so issued, he must be regarded in equity as holding it in trust for the irrigation and water-works company. It appears, however, that the 930 shares of stock in question were issued to him as trustee, and that he afterwards surrendered them, and that, as secretary of the orchard company, he issued other certificates in lieu of those surrendered, purporting to be to himself absolutely; but in equity this change was of no effect, as it appears to have been made without the consent of the irrigation and waterworks company, and without any sufficient consideration. There appears to be no consideration for the 10 notes aggregating $24,600, purporting to have been executed by the orchard company. The irrigation and waterworks company had conveyed the 640 acres of land, with the water rights, to the orchard company, as capital stock, and certificates had been issued upon it to Hanley, as trustee, months before the notes were executed. The president of the former company, after having so transferred the land and water right, with the concurrence of Hanley, and after having issued stock for it, changed his mind at the instance of the latter, months afterwards, and claimed and accepted the $24,600

as a consideration for it. It had been transferred to the orchard company for another consideration, that had been fully executed so far as they had the power. The surrender by Hanley of the 930 shares of stock held by him as trustee, and the re-issue of it by himself as secretary of the orchard company to himself, relieved of the trust, as he intended, and the execution of the 10 notes by Rowe in the name of the orchard company, and his delivery of them as president of one company, and acceptance of them as president of the other; the acknowledgment of Hanley of his obligation to pay them, and the secret agreements entered into by him with Rowe while they were officers and managing agents of both companies, by which he individually pledged to Rowe, as president of the irrigation and waterworks company, 600 shares of the stock of the orchard company, for which the former company had paid, and by which pledge he assumed no personal responsibility; and the stipulation that, if the stock put up with the respective notes should not be sufficient to pay them in case of default, Hanley should not be liable, and, in case he paid any or all of them, the stock securing them, or such as should be paid, should be returned to him; and the further stipulation that the stock so returned, with 330 shares not pledged, should be divided equally between Hanley and Rowe,— together constituted a scheme designed and concocted to enable Hanley and Rowe to make money at the expense of the two companies of which they were officers and agents. Equity abhors all such shifts and devices. These officers could not act adversely to the interests of their companies for their own benefit. Agents cannot bind their principals by contracts with respect to subjects in which they may have opposing interests. In such a case their own interests may interfere with their duty to their

principal. Self-interest may turn out to be a stronger motive than their obligation to their principals. Under such circumstances the law will not allow them to serve two masters,—to be led into such temptation. *Victor Gold & Silver Min. Co.* v. *National Bank of the Republic,* 15 Utah 391; *Wardell* v. *Railroad Co.,* 103 U. S. 651; Mechem, Ag. §§ 455, 456; 1 Mor. Priv. Corp. § 517; *McGourkey* v. *Railway,* 146 U. S. 536.

It is insisted that the Bear River Irrigation & Ogden Waterworks Company had no power to subscribe to the capital stock of the Bear River Valley Orchard Company, and become a stockholder in that company, and for that reason the court below erred in decreeing that Hanley held the 930 shares of stock in trust for the former company, and in decreeing that he should transfer the same to it. It appears from the original complaint, verified by Hanley, as well as from the evidence in the record, that Hanley and Rowe concerted and co-operated in the formation of the orchard company, and in conveying the 640 acres of land, in transferring the water right owned by the irrigation and waterworks company to the orchard company as its capital stock, in procuring the stock to be issued to Hanley in trust, in surrendering this stock, and in issuing the stock in question in lieu of it to himself. The wrongful subscription to the stock of the orchard company by the irrigation and waterworks company, and the wrongful issue of the stock in dispute, were accomplished by Hanley and his coadjutor, Rowe; and Hanley must not now be permitted to retain the property, or the stock which represents it, secured by his fraudulent designs and actions. Rowe made no claim to the stock on the trial, and still disclaims any interest in it. While the irrigation and waterworks company or its stockholders may institute equitable proceedings, and

have the deed to the land and transfer of the water right set aside, and in that way regain its property, or the state, by means of a writ of *quo warranto*, may secure a judgment of ouster against the orchard company, if it is an illegal corporation, the man who concocted the scheme that involved such illegal consequences and produced the mischief should not be permitted to profit by it. "The doctrine of *ultra vires*, when invoked for or against a corporation should not be allowed where it would defeat the ends of justice or work a legal wrong." *Railway Co.* v. *McCarthy*, 96 U. S. 258; *Arms Co.* v. *Barlow*, 63 N. Y. 62; *Glass Co.* v. *Dewey*, 16 Mass. 94; *Union Water Co.* v. *Murphy's Flat Fluming Co.*, 22 Cal. 621.

We find no error in this record. The decree of the court below is affirmed.

BARTCH, J., concurs.

MINER, J.   I concur in the judgment, but dissent from that portion of the decision holding that the judgment is final for the purposes of an appeal, when the motion for a new trial is overruled. In my opinion, exceptions to the decision of the court below, on the ground that it is not supported by the evidence, cannot be reviewed by this court, because the appeal was not taken within 60 days from the time of the rendition of the judgment, as expressly provided by part 1, § 3635, Comp. Laws Utah 1888.