**2016 UT App 187**

## THE UTAH COURT OF APPEALS

WITTINGHAM LLC, THE MUIR SECOND FAMILY LIMITED
PARTNERSHIP, AND DOROTHY JEANNE MUIR,
Appellees and Cross-appellants,
*v.*
TNE LIMITED PARTNERSHIP,
Appellant and Cross-appellee.

Opinion
No. 20140751-CA
Filed September 1, 2016

Second District Court, Farmington Department
The Honorable Robert J. Dale
No. 090700547

Jeffrey L. Silvestrini and Bradley M. Strassberg,
Attorneys for Appellant and Cross-appellee TNE
Limited Partnership

James K. Tracy and Stacy J. McNeill, Attorneys
for Appellees and Cross-appellants

JUDGE GREGORY K. ORME authored this Opinion, in which JUDGE
MICHELE M. CHRISTIANSEN and SENIOR JUDGE PAMELA T.
GREENWOOD concurred.[1]

ORME, Judge:

¶1      TNE Limited Partnership appeals an adverse district court ruling regarding the validity of a contract in its suit against Nick Muir, The Muir Second Family Limited Partnership (the Muir Partnership), and Wittingham LLC, the most recent

---

1. Senior Judge Pamela T. Greenwood sat by special assignment as authorized by law. *See generally* Utah R. Jud. Admin. 11-201(6).

successor to the Muir Partnership. The contract, which purported to bind the Muir Partnership, was signed by its putative general partner, Nick Muir, *after* the partnership had been dissolved. In view of Utah Supreme Court precedent, we must agree with the district court that the contract is void rather than voidable. And we reject a cross-appeal challenging the district court's refusal to award attorney fees. Accordingly, we affirm the district court's decision.

BACKGROUND

¶2    The Muir Partnership was administratively dissolved on May 3, 2007. Two years later, Nick Muir, its former general partner, arranged for a loan in the amount of $435,000 from TNE, ostensibly for the purpose of removing a valid encumbrance on a pair of apartment buildings owned by the Muir Partnership. Nick Muir signed the note memorializing the loan in the name of the Muir Partnership. The TNE loan was apparently secured by a trust deed recorded against the apartments, but Muir did not reveal to TNE that the Muir Partnership had been dissolved. Nor did Muir reveal that the prior encumbrance was illusory, instead stating that it secured a loan on which a substantial balance was still owed. In reality, the prior encumbrance was a sham, the result of some contrivance by Muir and others in which a trust deed had been recorded for which no meaningful consideration had been given.

¶3    After TNE disbursed the funds to Muir, the existing "encumbrance" was released, and the apartment buildings were transferred between successive business entities owned by members of Muir's family, the last transfer being to Wittingham LLC. Shortly after TNE disbursed the loan funds to Muir—and once the sham encumbrance and Muir's misappropriation of the TNE loan proceeds were discovered—Wittingham LLC, the Muir Partnership, and Dorothy Jeanne Muir (collectively, Wittingham) filed this action, seeking to have the TNE trust deed

declared void. TNE filed a counterclaim against Wittingham and Nick Muir, seeking a determination that the trust deed was valid. The district court determined that the TNE trust deed was void because the Muir Partnership was already dissolved when Muir signed the note and trust deed in favor of TNE. Thus, the court concluded that TNE could not enforce the trust deed.[2] Although TNE also raised claims against Muir personally, the district court determined that it lacked personal jurisdiction over him as he had never been served with process and had never made an appearance in the case. The court declined to grant Wittingham's request for attorney fees premised upon the fee

---

2. While Muir and his co-conspirators apparently misappropriated the rest of the loan proceeds, $22,368.65 was used to pay taxes and utilities related to the apartment complex now owned by Wittingham LLC. The district court determined that Wittingham was unjustly enriched to that extent and ordered the repayment of that amount. Neither party appealed this aspect of the district court's decision. TNE challenges, however, the district court's conclusion that Wittingham was unjustly enriched only to this extent. We agree with the district court that the funds purportedly disbursed to remove the sham encumbrance did not benefit Wittingham—after all, the sham encumbrance could have easily been set aside as fraudulent without any payment being made and likely with some recovery for the recordation of a wrongful lien—and that, as a consequence, Wittingham was not unjustly enriched by the payment of those funds. Because "[t]he measure of unjust enrichment . . . is the value of the benefit conferred on the other party," *Wilberg v. Hyatt*, 2012 UT App 233, ¶ 24, 285 P.3d 1249, it necessarily follows that, to the extent Wittingham derived no real benefit from the funds that TNE disbursed, Wittingham cannot be liable to TNE for repayment of those funds.

---

provisions of the TNE trust deed. Both TNE and Wittingham appeal. We affirm.

ISSUES AND STANDARD OF REVIEW

¶4     TNE argues that the district court erroneously "ruled that the TNE Trust Deed was void rather than voidable" and "that it lacked jurisdiction to render a disposition on TNE's cross-claims against Nick Muir." Wittingham challenges the district court's denial of its request for attorney fees pursuant to its contract. All three of these issues[3] are "legal questions, which we review for correctness." *See Hi-Country Estates Homeowners Ass'n v. Bagley & Co.*, 2008 UT App 105, ¶ 8, 182 P.3d 417 (void contract); *National Advertising Co. v. Murray City Corp.*, 2006 UT App 75, ¶ 11, 131 P.3d 872 (jurisdiction); *Watkins v. Henry Day Ford*, 2013 UT 49, ¶ 19, 304 P.3d 841 (contract interpretation).

ANALYSIS

I. The Trust Deed Was Void Under Utah Law.

¶5     "The distinction between void and voidable is important" because a voidable contract "may be ratified at the election of the injured party" while a void contract may not. *Ockey v. Lehmer*, 2008 UT 37, ¶ 18, 189 P.3d 51. Despite this important distinction, however, Utah appellate courts have, on occasion, been imprecise in their use of the terms and used "void" and "voidable" somewhat interchangeably. *Id.* Generally speaking, "the difference between void and voidable contracts is whether

---

3. The parties raise other issues, *see infra* ¶¶ 14–16, but our conclusion that the trust deed is void obviates the need to discuss in any detail the standards of review that might apply to these issues.

they offend public policy." *Id.* ¶ 19. An invalid contract is generally void if it "offend[s] public policy or harm[s] the public," but it is voidable if it offends only the aggrieved party. *Id.* Typical examples of contracts that offend public policy are those that involve egregious or illegal behavior, such as contracts to pay a gambling debt, *see, e.g.*, *Appleton v. Maxwell*, 65 P. 158, 159 (N.M. 1901); contracts tending to encourage or facilitate prostitution, *see, e.g.*, *Rosenblath v. Sanders*, 91 So. 252, 252 (La. 1922); *Hunstock v. Palmer*, 23 S.W. 294, 295 (Tex. Civ. App. 1893); life insurance contracts entered into in contemplation of murder, *see, e.g.*, *Lopez v. Life Ins. Co. of Am.*, 406 So. 2d 1155, 1159 (Fla. Dist. Ct. App. 1981); *Colyer's Adm'r v. New York Life Ins. Co.*, 188 S.W.2d 313, 314–15 (Ky. 1945); and contracts concerning the sale of a child, *see* Utah Code Ann. § 76-7-203(2)(a) (LexisNexis 2012). As the Utah Supreme Court explained,

> The actual fact is that the courts look at the over-all picture of each such questioned contract and determine upon the facts of the individual case whether the ends of justice demand that [a contract be considered void, rather than voidable]. In making such determination the following factors are taken into consideration: (a) the degree of criminality or evil involved; (b) the moral quality of the conduct of the parties; (c) comparison between them as to guilt or innocence; (d) the equities between them; and (e) the effect upon third parties or the public.

*McCormick v. Life Ins. Corp. of Am.*, 308 P.2d 949, 952 (Utah 1957).

¶6     The contract at issue in this case—a rather commonplace loan secured by a trust deed, albeit one entered into between the putative general partner of an administratively dissolved limited partnership and another party apparently unaware of the administrative dissolution—does not fall within the ambit of the public policy rationale outlined above or meet the five-part test

announced in *McCormick*. Nonetheless, as the Utah Supreme Court held in *Houston v. Utah Lake Land, Water & Power Co.*, 187 P. 174 (Utah 1919), contracts entered into by dissolved corporations are void in Utah, no matter how inoffensive the subject matter. *See id.* at 177. The same has been true with respect to limited partnerships until recently, because "[a] limited partnership is an entity equivalent to a corporation for litigation purposes[.]"[4] *Margulies ex rel. Margulies v. Upchurch*, 696 P.2d 1195, 1200 (Utah 1985). While this result is surely open to criticism[5]—and, indeed, it has recently been changed by the Legislature with respect to limited partnerships[6]—we see no way around it in this case.

---

4. Neither side contends that the rule applicable to the limited partnerships in this case is any different than the rule applicable to corporations, although prospectively this will not be so. *See infra* note 6.

5. The Washington Court of Appeals, deciding a case against a similar statutory backdrop, reached a less rigid result than did our Supreme Court in *Houston v. Utah Lake Land, Water & Power Co.*, 187 P. 174 (Utah 1919). *See White v. Dvorak*, 896 P.2d 85, 88 (Wash. Ct. App. 1995) ("[A]lthough [a] corporation cannot enforce a contract entered into when it lacked the capacity to contract, the contract is not absolutely void or completely unenforceable.").

6. Prior to 2013, the enforceability of contracts formed after dissolution of a limited partnership was governed by section 48-1-32 of the Utah Code. But that statute was repealed with Utah's adoption of the most recent version of the Uniform Limited Partnership Act. *See* 2013 Utah Laws 2185; Utah Code Ann. § 63I-2-248(1) (LexisNexis Supp. 2014) (setting forth the repeal date of the former sections addressing "General and Limited Liability Partnerships"). Under the new statute, the TNE trust deed would presumably be valid, because "[a] limited partnership is

(continued…)

¶7    TNE does not appeal the district court's conclusion that the trust deed was an invalid contract under Utah Code section 48-1-32, which was the governing statute in effect when TNE sued the Muir Partnership, and so we have no occasion to revisit this determination. Section 48-1-32 recognized only limited circumstances in which the contracts of a dissolved partnership would be valid, none of which TNE contends are applicable here. *See* Utah Code Ann. § 48-1-32(1)(a)–(b) (LexisNexis 2010). Thus, the only question remaining is whether the invalidity of the TNE trust deed resulted in a *void* or a merely *voidable* contract.

¶8    TNE maintains that the contract, though contrary to section 48-1-32, was voidable rather than void. It does so based on a common-law rule that it believes the Utah Supreme Court announced in *Miller v. Celebration Mining Co.*, 2001 UT 64, 29 P.3d 1231. In *Miller*, the former president of an administratively dissolved corporation sought to enforce a written agreement between himself, on behalf of the dissolved corporation, and the chairman of Celebration Mining Company. *Id.* ¶ 1. The *Miller* court held that where a person represents himself as having authority to contract on behalf of a dissolved corporation, the misrepresentation induces another party to enter into such a contract, and the other party was justified in relying upon the misrepresentation, the contract is voidable *as between the person who engaged in the misrepresentation and the other party*, at the other

---

(…continued)
[now] bound by a general partner's act after dissolution which . . . would have bound the limited partnership . . . before dissolution," assuming the party seeking to enforce the contract is further able to prove that it did "not know or have notice of the dissolution." *See* Utah Code Ann. § 48-2e-804(1)(b) (LexisNexis 2015). TNE does not claim the current statute has retroactive effect.

party's option. *See id.* ¶¶ 10, 12–16. Although *Miller* could be, and by this court has indeed been, read more broadly than this, *see Orvis v. Johnson*, 2006 UT App 296U, para. 5, we are persuaded that such a reading was perhaps the product of a little wishful thinking and was, in any event, in error.

¶9     A careful reading of *Miller* may explain this court's misstep in *Orvis v. Johnson*, where we stated, citing *Miller*, that a corporation's postdissolution contracts are "merely *voidable*" at the other party's option. *See Orvis v. Johnson*, 2006 UT App 296U, para. 5 (emphasis in original). But *Miller* did not overrule the Utah Supreme Court's decision in *Houston*,[7] because whereas *Houston* specifically holds that contracts signed on behalf of dissolved corporations are void, *see* 187 P. at 177, *Miller* finessed the issue by stating that such contracts are merely voidable *as between the individual who signed the agreement*, purportedly on behalf of the dissolved corporation, and the other party, *see* 2001 UT 64, ¶¶ 10–11. TNE has directed this court to no other decision that might have overturned the rule announced in *Houston*, namely that such contracts are "wholly void." *See* 187 P. at 177. Thus, that rule controls the appeal before us, and we disavow *Orvis* to the extent it is inconsistent with *Miller* and *Houston*.

¶10     Moreover, a close reading of *Houston* confirms that the Utah Supreme Court in that case used the term "void" advisedly rather than casually, because it further clarified that such contracts were "not confirmable, and not a subject of ratification." 187 P. at 177. The Court held that a "civilly dead corporation could not ratify those things that it had no authority

---

7. Chief Justice Howe, in dissent, noted that "[c]learly, a contract is void as to the corporation itself post dissolution and we have previously so held." *Miller v. Celebration Mining Co.*, 2001 UT 64, ¶ 34 n.3, 29 P.3d 1231 (Howe, C.J., dissenting) (citing *Houston v. Utah Lake Land, Water & Power Co.*, 187 P. 174, 177 (Utah 1919)).

and no power to do."[8] *Id.* Therefore, *Houston* controls our resolution of this case.[9]

---

8. The Court in *Houston* described the dissolved corporation's business tactics in colorful terms:

> It is utterly fallacious to say that a corporation by its corporate death is given everlasting corporate life . . . . If in this case the corporation could buy the stock of a California corporation and engage in the loan business in California, it could as well engage in banking in Chicago or buy and operate an oil well in Wyoming. If the theory plausibly presented by appellants is tenable, a private corporation in this state desiring to enlarge and extend its powers may have its charter forfeited by failing to pay its annual state corporation license tax and then become a law unto itself, engage in any kind of business that may suit the fancy of its officers, and become a buccaneer on the high seas of finance.

*Houston v. Utah Lake Land, Water & Power Co.*, 187 P. 174, 176–77 (Utah 1919).

9. TNE and Wittingham also discuss *Bagnall v. Suburbia Land Co.*, 579 P.2d 914 (Utah 1978), but only *Houston* is completely on point. Although *Bagnall* comes close to addressing the issues presented in this case, it does so only in passing and the decision's language makes clear that it was decided primarily on a lis pendens issue. *See id.* at 916–17 (noting that a deed "executed without corporate authority . . . was a nullity" but resting its decision on "the fact that a [recorded] lis pendens . . . serves to conclusively defeat any interest [a party] may have acquired through [a grantor whose claims were defeated] by reason of the doctrine of lis pendens").

¶11    Thus, although a contrary outcome might well be more equitable under the circumstances, the burden of precedent—even arguably outdated precedent based on the conceits of an entirely different era—dictates our decision in this matter.[10] Accordingly, we affirm the district court's determination that the TNE trust deed was void.

## II. The District Court Lacked Personal Jurisdiction over Muir.

¶12    TNE also appeals the district court's conclusion that it lacked jurisdiction over TNE's claim against Nick Muir. We

---

10. Although this court must follow the rule of *Houston*, the Utah Supreme Court is not similarly bound. Given the shift in the applicable statutory law and the adaptability of the more disciplined view that only those contracts truly against the public interest are void, the Supreme Court may well wish to consider whether the time has come for *Houston* to be overruled. *See State v. Menzies*, 889 P.2d 393, 399 (Utah 1994) ("The general American doctrine as applied to courts of last resort is that a court is not inexorably bound by its own precedents but will follow the rule of law which it has established in earlier cases, unless clearly convinced that the rule was originally erroneous or is no longer sound because of changing conditions and that more good than harm will come by departing from precedent.") (citations and internal quotation marks omitted). The precedent is an old one—*Houston* was decided in the same year that the Treaty of Versailles was signed—and much has changed in the law of business organizations during the century following World War I. Moreover, since Chief Justice Howe's dissenting opinion in *Miller*, no Utah court has so much as referenced *Houston* or its holding in any way—including the majority in *Miller*. *Compare Miller v. Celebration Mining Co.*, 2001 UT 64, ¶ 34 n.3, 29 P.3d 1231 (Howe, C.J., dissenting), *with id.* ¶¶ 6–16 (majority opinion).

affirm the district court's decision because (1) TNE failed to serve Muir notice of its claim against him and (2) Muir never waived service of process by making an appearance or responding to TNE's claim against him. *Cf. Wells v. Kelley*, 42 P. 1133, 1133–34 (Utah 1895) (explaining that personal service on a party is ordinarily required to give the court jurisdiction as to that party, but that "having appeared . . . at the hearing, without making objection, [the party] waived any technical right as to service . . . which he might have had").[11]

### III. Wittingham Is Not Entitled to Attorney Fees.

¶13    There is no validity to *any* claim derived from the trust deed because the deed was void ab initio. *See Consolidated Realty Group v. Sizzling Platter, Inc.*, 930 P.2d 268, 273 n.7 (Utah Ct. App. 1996) ("[T]he term 'void' can only be properly applied to those contracts that are of no effect whatsoever, such as are a mere nullity[.]"). Thus, Wittingham is not entitled to recover attorney fees pursuant to the terms of the trust deed, regardless of what the proper interpretation of the terms of that agreement might be if the contract were valid, because the agreement is wholly void. Generally, "attorney fees may be awarded only when they are authorized by statute or contract." *Fericks v. Lucy Ann Soffe Trust*, 2004 UT 85, ¶ 23, 100 P.3d 1200. As the only contract between the

---

11. Because its claim against Muir was dismissed without prejudice, TNE may be in a position to reassert it. *Miller* makes clear that a person who signs a contract on behalf of a business entity that does not exist may be held personally liable by the other party to the contract as a result of the deception. 2001 UT 64, ¶¶ 7–8 (acknowledging that a person who "purport[s] to act as or on behalf" of an administratively dissolved business entity may be "jointly and severally liable for all liabilities created while so acting") (citation and internal quotation marks omitted).

parties was one that was wholly void and as Wittingham has identified no independent statutory basis upon which we may grant it attorney fees, it follows that its request for fees must be denied.

## IV. Other Issues

¶14    TNE's estoppel and contract theories cannot prevail because these theories are also premised on the validity of what we have determined to be a void contract. *See Millard County School Dist. v. State Bank of Millard County*, 14 P.2d 967, 972 (Utah 1932) ("It may well be said that contracts and corporate acts and transactions which are . . . illegal and void . . . cannot support an action nor become enforceable by performance, ratification, or estoppel[.]"); *Consolidated Realty Group*, 930 P.2d at 273 n.7. And we agree with the district court that, as the trust deed was void, "TNE ha[d] no legal or equitable interest in the Apartments, [and thus] lack[ed] standing . . . to challenge the Dissolved Partnership's conveyance of the Apartments to Wittingham." *See Millard County School Dist.*, 14 P.2d at 972.

¶15    TNE also argues that the conveyance of the apartment buildings from the Muir Partnership to, ultimately, Wittingham LLC constituted a fraudulent transfer. The district court declined to address the merits of this claim because it concluded that Nick Muir was an indispensable party. In light of that conclusion and its conclusion that it lacked personal jurisdiction over Muir, the court dismissed TNE's fraudulent transfer claims without prejudice. We do not disturb that ruling.

¶16    The final argument Wittingham raised concerns a judgment against one Mario Naujoks. We are unable to reach the argument, however, as it is inadequately briefed. Although Wittingham refers to the record of the district court's decision concerning Naujoks, Wittingham fails to seriously analyze that decision and the district court's reasoning such that we can meaningfully review the court's decision in this regard. *See, e.g.*,

*State v. Sloan*, 2003 UT App 170, ¶ 13, 72 P.3d 138 ("Briefs must contain reasoned analysis based upon relevant legal authority. An issue is inadequately briefed when the overall analysis of the issue is so lacking as to shift the burden of research and argument to the reviewing court.") (citation and internal quotation marks omitted).

## CONCLUSION

¶17    Because the TNE trust deed was void as to the Muir Partnership, it cannot be enforced, and neither party may avail itself of remedies premised upon the existence of a valid contract. Thus, the district court's judgment is affirmed.

———————