Paul GARDNER; Paul Gardner dba NUF Corporation; and NUF Corporation, a Utah corporation, Plaintiffs and Appellee,

v.

Kenneth MADSEN, Marilyn Madsen, and Nauti Lady L.C., Defendants and Appellants.

No. 960683–CA.

Court of Appeals of Utah.

Dec. 4, 1997.

Neil B. Crist, Bountiful, for Defendants and Appellants.

Lowell V. Summerhays, Salt Lake City, for Appellee.

Before BENCH, GREENWOOD and ORME, JJ.

## OPINION

BENCH, Judge:

Defendants appeal the trial court's decision that Paul Gardner (plaintiff) had standing to enforce a contract with defendants, quieting title in plaintiff to an interest in a houseboat, and awarding him damages, attorney fees, and costs. We affirm, but modify the amount of damages, and remand.

## BACKGROUND

On June 15, 1990, NUF, Inc., by plaintiff as an officer of the corporation, entered into a written contract with defendants Kenneth and Marilyn Madsen for a ten percent ownership interest in a sixty-two foot houseboat known as Nauti Lady and harbored at Lake Powell. The contract stated that both Kenneth and Marilyn Madsen were parties to the contract, although only Kenneth Madsen signed. The purchase price of $10,000 was paid by Transionics, a corporation owned by plaintiff. The contract also had a handwritten addendum granting plaintiff fifty percent interest in three waverunners, for which plaintiff paid an additional $4450.

At trial, plaintiff testified that he used the houseboat for a total of nine weeks after entering the contract, but that defendants denied him further use beginning in 1991. The contract provided that if plaintiff did not comply with certain rules and regulations, he would forfeit his entire interest in the house-

boat. Defendants claimed that plaintiff damaged the houseboat and violated other rules that justified forfeiture of plaintiff's interest and warranted damages from plaintiff for time the houseboat was unavailable while being repaired.

In July of 1993, NUF, Inc., filed an action against the Madsens alleging breach of contract for denying plaintiff use of the houseboat and waverunners, and fraud in the inducement. The complaint also sought an accounting of maintenance fees and expenses. Defendants moved to dismiss the complaint, arguing that NUF, Inc. was "not a valid legal entity to pursue an action in the Courts of this State." Unbeknownst to either party when the contract was signed, NUF, Inc. (NUF 1), was involuntarily dissolved by the Utah Department of Commerce on May 1, 1990, for failure to file an annual report. Defendant's motion to dismiss was treated as a motion for summary judgment because matters outside the pleadings were presented to the court. *See* Utah R. Civ. P. 12(b). The Honorable J. Dennis Frederick granted summary judgment to defendants.

Shortly after the original complaint was dismissed on summary judgment, plaintiff reincorporated NUF, Inc. (NUF 2) and filed a second complaint. The second complaint was nearly identical to the first complaint, but added Paul Gardner personally as a plaintiff and Nauti Lady L.C. as a defendant because the Madsens had transferred their interests to Nauti Lady L.C. in July 1993. Defendants counterclaimed for damages allegedly caused by plaintiff to the houseboat and for loss of use while it was being repaired. This second complaint was assigned to the Honorable Homer F. Wilkinson. Defendants filed a motion to dismiss, asserting res judicata. Defendants also filed a motion for summary judgment, alleging the contract was void because it was entered into by a dissolved corporation and, therefore, the dissolved corporation or someone purporting to

act on its behalf had no standing to sue. Both motions were denied.

After a two-day bench trial, Judge Wilkinson made the following findings of fact: plaintiff was a party to the contract and NUF 1 assigned its rights to plaintiff; plaintiff was entitled to ten percent ownership of the houseboat; the contract provided plaintiff with six weeks of summer usage (defined as May 1 through October 1); plaintiff had been wrongfully deprived of use of the houseboat for twenty-seven weeks, at the reasonable value of $1800 per week;[1] plaintiff had been overcharged for maintenance expenses; plaintiff owned a fifty percent interest in the three waverunners; plaintiff violated the houseboat rules by bringing his dog aboard, although there were no damages; and defendants had failed to prove, as alleged in their counterclaim, that plaintiff had negligently damaged the houseboat except for damage to the refrigerator in the amount of $201.

The judgment against the Madsens amounted to $21,600 for lost use of the houseboat before July 1993 (less $400 for unpaid fees and $201 for the damage to the refrigerator) plus $8773.65 for overpayment of expenses and $9104.27 prejudgment interest, for a total of $38,876.27. The judgment against Nauti Lady L.C. was $27,000 for lost use of the boat after July 1993 (less $200 for unpaid fees) plus prejudgment interest of $3233.01, for a total judgment of $30,033.01. As provided in the contract, attorney fees and costs were awarded to plaintiff against defendants jointly and severally.

After trial, Kenneth Madsen received an anonymous phone call informing him that Clayton Wilkinson, who had been an incorporator and board member of NUF 1, was Judge Wilkinson's nephew. Defendants moved for a new trial and reassignment of the case to a different judge. Plaintiff obtained an affidavit from Clayton Wilkinson in which he admitted he was an incorporator of NUF 1, but claimed not to have participated regularly in board meetings or management

---

**1.** Twelve weeks were assessed against the Madsens for wrongful deprivation before July 1993 when the Madsens assigned their interest to Nauti Lady L.C. An additional fifteen weeks were assessed against Nauti Lady L.C. for periods of wrongful deprivation occurring after July 1993.

Defendants admit in their answer that $1800 was a reasonable weekly rental value of the houseboat. In fact, in their counterclaim, defendants sought damages of $3500 per week for time when the boat was being repaired because of the alleged negligent damage by plaintiff.

of the corporation, and claimed not to have been on the board of directors for more than three years. Clayton Wilkinson's affidavit further indicated that he had nothing to gain from the case, regardless of the outcome, and stated that he had never communicated with Judge Wilkinson about the case. At a hearing on defendants' motion, Judge Wilkinson admitted his relationship to Clayton Wilkinson but stated that he had no idea his nephew had anything to do with NUF 1, and that he first heard of his nephew's involvement when Clayton's name was mentioned during testimony near the end of trial. The motion for a new trial and reassignment of the judge was denied, and defendants filed their appeal.

## ISSUES

Defendants allege the following errors on appeal: (1) the second complaint should have been dismissed based on issue preclusion; (2) plaintiff should not have been able to enforce the contract; (3) the court awarded excessive damages; and (4) the trial judge erred in not recusing himself because of his relationship with Clayton Wilkinson.

## ANALYSIS

### Issue Preclusion

Defendants contend that the second complaint should have been dismissed based on issue preclusion because the nearly identical first complaint was dismissed on the ground that NUF 1 was not a valid legal entity. "The trial court's conclusion that res judicata does not apply presents a question of law. We review such questions for correctness, according no particular deference to the trial court." *Office of Recovery Servs. v. V.G.P.*, 845 P.2d 944, 946 (Utah Ct.App. 1992).

The issue preclusion branch of res judicata has four requirements:

First, the issue challenged must be identical in the previous action and in the case at hand. Second, the issue must have been decided in a final judgment on the merits in the previous action. Third, the issue must have been competently, fully, and fairly litigated in the previous action.

Fourth, the party against whom collateral estoppel is invoked in the current action must have been either a party or privy to a party in the previous action.

*Jones, Waldo, Holbrook & McDonough v. Dawson*, 923 P.2d 1366, 1370 (Utah 1996). Judge Wilkinson did not state his reason for denying defendants' motion to dismiss the second complaint. From our review of the issue, however, we conclude that the second element requiring judgment on the merits is lacking.

Other jurisdictions have squarely held that incapability to sue as a legal entity does not constitute a judgment on the merits for purposes of res judicata. *See, e.g., Johnston v. Fancher*, 447 F.Supp. 512, 514–15 (W.D.Okla. 1977) (holding summary judgment on grounds of incapacity to sue was not judgment on the merits); *National Heritage Corp. v. Mount Olive Mem'l Gardens*, 244 Ga. 240, 260 S.E.2d 1, 3 (1979) (holding summary judgment against corporation for lack of certificate of authority to do business did not address case's merits); *Korte Trucking Co. v. Broadway Ford Truck Sales, Inc.*, 877 S.W.2d 218, 220 (Mo.Ct.App.1994) (concluding dismissal of case on ground that corporation "was not a legal entity" did not render judgment on merits). We adopt the rationale of these cases. Because dismissal of plaintiff's first action was not a judgment on the merits, the second action was not barred by res judicata. The trial court therefore properly denied defendants' motion to dismiss.

### Enforceability of the Contract

Defendants assert that the trial court erred by allowing plaintiff, as an individual, to enforce the contract. The trial court's findings are somewhat inconsistent, but provide as follows:

A. The Court finds that at all times the Defendants dealt with Paul Gardner as an individual and the contract ... was between the Defendants and Paul Gardner.

B. The Court finds that there was an assignment from Nuf Inc. to Paul Gardner of its cause of action against the Defendants.

Defendants argue that according to the plain and unambiguous language of the contract, the only parties to the contract were the Madsens and NUF 1, not Paul Gardner. A trial court may properly consider extrinsic evidence to clarify the terms of a contract only when the language of the agreement is ambiguous. *See Ward v. Intermountain Farmers Ass'n,* 907 P.2d 264, 268 (Utah 1995). To determine whether a contract is ambiguous, "we first look to the four corners of the contract." *Interwest Constr. v. Palmer,* 923 P.2d 1350, 1359 (Utah 1996). Because the language of the contract does not reasonably support the trial court's interpretation that Gardner, rather than NUF 1, was a party to the contract, extrinsic evidence should not have been admitted. *See Ward,* 907 P.2d at 269.

However, this does not mean that plaintiff lacks the ability to enforce the contract because the individual who signs a contract in the name of a nonexistent corporation can be a party to the contract. *See White v. Dvorak,* 78 Wash.App. 105, 896 P.2d 85, 87 (1995).[2] In *White,* the Washington Court of Appeals dealt with a similar case in which an individual entered into a contract on behalf of a corporation that had been dissolved for failure to pay dues and file an annual report. *Id.* The *White* court held that "absent unfair prejudice, an individual purporting to act as a corporation is a party to a contract signed in the name of a nonexistent corporation. As a party, the individual can sue for breach of contract." *Id.* Although the individual who signs for a corporation is not a party to the contract, the individual may become a party with standing to enforce the contract by "assuming to act as a corporation without authority." *Id.* at 90. The Washington court reasoned that all parties to the contract undeniably intended to create a valid, binding contract. Even if it is later determined that one of the parties erroneously represented itself to be a valid corporation, the contract is still enforceable. *See id.* Thus, "[a]bsent unfair prejudice ... from the use of a corporate name in the contract, [the individual purporting to act for a corporation]

is a party to the contract and has an individual cause of action for its breach." *Id.*

Defendants nonetheless assert that any contract entered into by a dissolved corporation beyond winding-up is void. *See Bagnall v. Suburbia Land Co.,* 579 P.2d 914, 916 (Utah 1978) (holding deed executed by suspended corporation was a nullity because there was no showing that it was for purpose of winding-up pursuant to statute); *Houston v. Utah Lake Land, Water & Power Co.,* 55 Utah 393, 400–01, 187 P. 174, 177 (1919) (holding purchase of new corporation was "wholly void" because winding-up statute bars dissolving corporation from engaging in any new business transactions). Both *Bagnall* and *Houston* considered statutes that allowed a dissolved corporation to sue and be sued in order to wind-up the affairs of a corporation. *See Bagnall,* 579 P.2d at 916 (citing Utah Code Ann. § 16–10–101 (1953)); *Houston,* 55 Utah at 400–01, 187 P. at 176. Neither case, however, had occasion to consider the legal effect of Utah Code Ann. § 16–10–139 (repealed and recodified 1992).

At all times pertinent to this lawsuit, section 16–10–139 provided: "All persons who assume to act as a corporation without authority so to do shall be jointly and severally liable for all debts and liabilities incurred or arising as a result thereof." This statute is identical to the statute relied upon in *White. See White,* 896 P.2d at 89. The *White* court concluded that because the statute imposed liability on the person who assumes to act as a corporation, the contract is not void. *See id.* at 88. Furthermore, the contract is enforceable by both parties. *See id.* at 90. Thus, "when a third party enters into a contract with a person purporting to act as a corporation, the third party is bound." *Id.* (citing 1 G. Hornstein, *Corporation Law and Practice* § 93 (1959)). Following the reasoning in *White,* we conclude that the contract in the present case is not void, and that plaintiff individually has standing to enforce the contract against defendants.

---

2. This court may affirm the trial court on any proper ground, even though not relied upon below. *See Castillo v. Atlanta Cas. Co.,* 939 P.2d 1204, 1210 (Utah Ct.App.1997).

## Damages

■ Defendants next claim that the trial court awarded excessive damages to plaintiff. Defendants argue that the trial court erred in finding the interlineation of "6 summer weeks" in the contract was what the parties intended. This resulted in plaintiff being awarded approximately thirty percent of the most valuable time when he only purchased a ten percent interest in the houseboat. Defendants also argue that there was sufficient proof that plaintiff negligently damaged the engines and outdrives.

■ After hearing conflicting evidence and looking at five versions of the same contract, the trial court entered findings of fact. The trial court believed plaintiff's version of the facts that the contract entitled him to use the houseboat for six summer weeks each year. A trial court's findings of fact will not be overturned unless they are clearly erroneous. *See* Utah R. Civ. P. 52(a). "Factual findings are clearly erroneous only if they are 'against the clear weight of the evidence.'" *Housing Auth. v. Delgado,* 914 P.2d 1163, 1165 (Utah Ct.App. 1996) (citation omitted). When there is conflicting evidence, we defer to the trial court as the factfinder. *See id.* The existence of conflicting evidence does not give rise to clear error as long as evidence supports the trial court's decision. *See Power Sys. & Controls v. Keith's Elec.,* 765 P.2d 5, 9 (Utah Ct.App.1988) ("The factual findings and the resulting judgment of the trier of fact are to remain undisturbed if based upon substantial, competent and admissible evidence."). Merely arguing that the trial court should have believed defendants' evidence, rather than plaintiff's, does not meet the clear error standard. *Id.*

The trial court believed the contract consisted of the terms presented by plaintiff, even though some of the elements were disproportionate. Interestingly, the contract required plaintiff to pay twenty percent, or double his ownership interest, of the costs to "maintain insurance, buoy fees, and other miscellaneous costs." This suggests that plaintiff's interest was not a flat ten percent, but that there were specific negotiations and motivations for the deal. "We have often observed in our case law that a court will neither make a better contract for the parties than they have made for themselves nor enforce asserted rights not supported by the contract itself." *Jensen v. Redevelopment Agency,* 943 P.2d 639, 323 Utah Adv. Rep. 3, 4 (Utah 1997); *see also Hal Taylor Assocs. v. Unionamerica, Inc.,* 657 P.2d 743, 749 (Utah 1982) ("It is a long-standing rule in Utah that persons dealing at arm's length are entitled to contract on their own terms without the intervention of the courts to relieve either party from the effects of a bad bargain.").

Defendants also take issue with the court's finding that no evidence was presented that the engines were damaged by plaintiff's negligence. Defendants argue that the trial court ignored the theory of res ipsa loquitur in not assessing damages against plaintiff for damage to the engines, while adopting the theory in assessing damages against plaintiff for allowing the refrigerator to acquire mold. Defendants have failed to cite any applicable law for this argument and, therefore, we decline to address it. *See Walker v. U.S. Gen., Inc.,* 916 P.2d 903, 908 (Utah 1996).

■ We do, however, agree that there was one error in the calculation of damages. The trial court awarded damages to plaintiff based on the court's recollection that plaintiff had only been allowed to use the houseboat six weeks before being deprived of further use. However, plaintiff testified at trial as follows:

Q (BY MR. SUMMERHAYS) NOW WITH RESPECT TO THE SCHEDULING OF THE USE OF THE BOAT WHAT OCCASIONS HAVE YOU HAD TO ACTUALLY USE THE BOAT? HOW MANY TIMES HAVE YOU ACTUALLY USED THE BOAT?

A I THINK THE TOTAL TIMES I'VE USED THE BOAT SINCE I PURCHASED IN 1990 IS A TOTAL OF NINE WEEKS.

Plaintiff therefore conceded that he had used the houseboat nine weeks. The damage award against the Madsens for depriving plaintiff use of the houseboat before July 1993 is therefore reduced by three weeks, at

$1800 per week, and the prejudgment interest erroneously awarded thereon.

### Failure to Recuse

 Defendants argue that the trial judge erred in failing to disclose that his nephew was a principal in NUF 1, and in failing to recuse himself and grant a new trial with a different judge. At the end of trial, there was testimony that Clayton Wilkinson was an incorporator of NUF 1, that he was on the board of directors of NUF 1, and that he was plaintiff's partner in Probe Realty.

After trial, defendants learned that Clayton Wilkinson was Judge Wilkinson's nephew and filed a motion for a new trial and reassignment of the case. In support of their motion, defendants filed an affidavit of Kenneth Madsen. In response, plaintiff filed an affidavit from Clayton Wilkinson in which he admitted he was an incorporator of NUF 1,[3] and member of its board of directors, but claimed that he had never regularly participated in board meetings or management of the company. Wilkinson averred he had not been a member of the board of directors for more than three years, and claimed he had nothing to gain from the litigation, regardless of who prevailed.

At a hearing on the motion, Judge Wilkinson stated that Clayton Wilkinson was his nephew. The judge also stated that he was surprised when Clayton Wilkinson's name was mentioned near the end of the trial, and that he had not spoken with Clayton Wilkinson or anyone else about the case.[4]

On appeal, defendants argue that Judge Wilkinson had a conflict of interest that required recusal. Canon 3 of Utah's Code of Judicial Conduct provides:

(E)(1): A judge shall enter a disqualification in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where:

---

3. Clayton Wilkinson was not listed as an incorporator on the articles of incorporation of NUF 2.

4. Defendants do not argue that their motion for new trial and reassignment of judge was brought under Rule 63(b) of the Utah Rules of Civil Procedure, or that the court failed to comply with the procedures required under the rule.

. . .

(d) the judge or the judge's spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:

(i) is a party to the proceeding, or an officer, director, or trustee of a party;

. . . .

(iii) is known by the judge to have a more than de minimis interest that could be substantially affected by the proceeding.

Furthermore, Utah Code Ann. § 78–7–1 (1996) provides:

(1) Except by consent of all parties, no justice, judge, or justice court judge may sit or act in any action or proceeding:

. . . .

(b) when he is related to either party by consanguinity or affinity within the third degree, computed according to the rules of the common law.

Although Clayton Wilkinson is within the third degree of consanguinity with Judge Wilkinson, there is no evidence that Clayton Wilkinson was a party or had any interest in the outcome of this case. Defendants argue, however, that Clayton Wilkinson was a director and incorporator of NUF 1, and also of Probe Realty, and therefore has an interest in the outcome. Defendants cite *Regional Sales Agency, Inc. v. Reichert*, 830 P.2d 252, 257 (Utah 1992), for the proposition that a judge may not hear a case where that judge's relative is a partner with an interest that might be sufficiently affected by the outcome of the case. While we agree with defendants' reading of *Reichert*, we cannot agree that, on the facts in the record, Clayton Wilkinson was a "party" or had an "interest" in the outcome of this case. Clayton Wilkinson's affidavit affirmatively stated that he had nothing to gain by the outcome of this case. In any event, Judge Frederick dismissed the first complaint, and held that

---

We note that when presented with an affidavit of bias under Rule 63(b), the judge has only two options: "the judge must either certify the affidavit to another judge for review or transfer the case to another judge." *Barnard v. Murphy*, 882 P.2d 679, 682 (Utah Ct.App.1994).

NUF 1 lacked standing to pursue any relief. No one has appealed that ruling. Even if Clayton Wilkinson was a shareholder in NUF 1, it appears he stood to gain nothing from the present action.[5]

If Clayton Wilkinson has a partnership with plaintiff in some other venture, it is too distant and indirect to be considered an "interest" in the outcome of this case. *See Blake v. Gilbert,* 702 P.2d 631, 640–41 (Alaska 1985) (holding Canon 3 and similar state statute that judge was not required to recuse himself where his nephew was partner with defendant in ownership of office building not part of litigation, even though if successful, plaintiff could have obtained charging order to take that interest); *Graley v. Workman,* 176 W.Va. 103, 341 S.E.2d 850, 851 (1986) (holding pursuant to Canon 3 that recusal was not warranted by fact that judge's husband had remote business relationship with one party to divorce). The trial judge therefore did not err by failing to recuse himself.

### Attorney Fees and Costs

 Plaintiff was awarded his trial costs and attorney fees pursuant to the terms of the contract. Plaintiff now seeks costs and attorney fees on appeal. " 'A party who was awarded attorney fees and costs at trial is also entitled to attorney fees and costs if that party prevails on appeal.' " *Living Scriptures, Inc. v. Kudlik,* 890 P.2d 7, 11 (Utah Ct.App.1995) (citation omitted). We have upheld plaintiff's judgment on appeal, with the exception of correcting the calculation in the number of weeks plaintiff was denied use of the houseboat. While plaintiff

> did not hold on to all of his trial victory on appeal and some adjustment may be necessary so that he does not recover fees attributable to issues on which he did not prevail[,] ... he is properly regarded as the party who prevailed on appeal and "is entitled on remand to an award of [his] attorney fees reasonably incurred on appeal."

*Wright v. Westside Nursery,* 787 P.2d 508, 517 (Utah Ct.App.1990) (citation omitted). Accordingly, we remand the case for an

award of attorney fees and costs for the issues upon which plaintiff has prevailed on appeal.

### CONCLUSION

The verdict and judgment of the trial court is affirmed with the exception that the judgment against the Madsens is reduced by $5400 and the prejudgment interest thereon awarded. Plaintiff is awarded attorney fees and costs on appeal except for the limited damage issue on which he did not prevail on appeal. We remand for a determination and award to plaintiff of attorney fees and costs reasonably incurred on appeal.

GREENWOOD and ORME, JJ., concur.

---

**5.** At the hearing, Judge Wilkinson stated it was his practice to disclose family relationships, but in this case he decided not to disclose his relationship because it did not come up until the end of the trial. To avoid any appearance of impropriety, the better course would be to disclose a family relationship whenever it arises.